## ACHLEY'S CASE.

*Supreme Court, First District; Special Term, December,* 1856.

LEGISLATIVE PRACTICE.—POWERS OF " COMMON COUNCIL."—MODE OF EXERCISE.—MANDAMUS.

The " Common Council" of the city of New-York now consists of the Aldermen and Councilmen only.

The Mayor is not a member of the Common Council, although an officer of the " Corporation."

Powers conferred by statute upon the Common Council, may be exercised by the Aldermen and Councilmen without the co-operation of the Mayor; and he has no veto power upon their exercise.

The exercise of a power to appoint to office, is a purely *executive* act; and is in no sense *legislative.*

The action of the Mayor upon matters passed by the Common Council, is confined to such resolves, &c., as will take effect as *acts or laws of the Corporation;* and does not extend to resolves, &c., which operate only as acts of the *Common Council.*

The form of communication adopted by the two Boards, in exercising powers conferred upon the Common Council, cannot enlarge the authority of the Mayor.

The power to appoint Commissioners of Deeds being vested in the Common Council, the Mayor has no veto power over their appointments.

A mandamus is the proper remedy to compel the proper officer to administer the oath of office to a party entitled to enter upon an office.

On application for a mandamus, when both parties are heard, and there is no dispute about the facts, a *peremptory* mandamus will be granted in the first instance.

Application for a mandamus.

Julius M. Achley, claiming to have been appointed, by the Common Council of the city of New-York, a commissioner of deeds, applied to the clerk of the city and county of New-York, to be sworn in. The clerk refused the application, on the ground that no valid appointment had been made, the resolution of the Common Council having been vetoed by the Mayor. A mandamus was now applied for, to compel the clerk to administer the oath.

*John Foot*, for the motion.

*R. J. Clark*, opposed.

DAVIES, J.—By the act of March 7, 1848 (*Laws of* 1848, *ch.* 75), it is declared that " commissioners of deeds, in the cities of this State, shall be appointed by the Common Council of such cities respectively."

It thus seems that the act confers the power of appointment on the Common Councils of the respective cities of this State, exclusively, without the concurrence or co-operation of any other body.

In relation to appointments made in and for this city, it becomes necessary to inquire what is the Common Council of this city, and who compose it.

Section 1, of the amended charter of 1830 (*Davies' Laws*, 199), declares that the Board of Aldermen and the Board of Assistants shall " together form the Common Council of the city."

Section 1, of the amended charter of 1853 (*Davies' Laws*, 210), declares that the Board of Aldermen and the Board of Councilmen shall " together form the Common Council of the city."

It would seem, therefore, to be quite clear, without any negative words, that the Common Council of this city was composed only of the Board of Aldermen and the Board of Councilmen.

But it will be recollected, that previous to the amended charter of 1830, the Mayor and Recorder of the city, by virtue of the then existing charter, were members of the Common Council, and sat with the Aldermen and Assistants, when assembled in Common Council. (*Montg. Charter*, § 14; *Davies' Laws*, 175.) By section 15 of the amended charter of 1830 (*Davies' Laws*, 201), it is declared that " neither the Mayor nor Recorder of the city of New-York shall be a member of the Common Council thereof, after the second Tuesday of May, 1831." This express prohibition, coupled with the declaration in the amended charter, would seem to make it clear, beyond question, that the Common Council is solely composed of the Board of Aldermen and the Board of Councilmen, and that the Mayor cannot be regarded in any sense as part of the Common Council; and it follows, that when an act of the legislature declares certain appointments shall be made by the Common Council, it means the Common Council only, without the concurrence or approval of the Mayor. I know of no rule applicable to the construction of statutes which would authorize such a reading of that now under consideration, so as to require the co-operation of any other body. It seems to me, that the power of appointment is conferred by the laws exclusively upon the Common Council, to be exercised by them, irrespective of the concurrence or non-concurrence of the Mayor or any other functionary.

The exercise of the power of appointment to office is a purely executive act; and when the authority conferred has been exercised, it is final, for the term of the appointee.

That the power to make appointments to office was regarded by the Legislature as the exercise of executive authority, is apparent from section 9 of the amended charter of 1844. (*Davies' Laws*, 205.)

By that section it is provided, that no committee or member of the Common Council " shall perform any executive business whatever, *except such as is or shall be especially imposed on them by the laws of this State*, and *except that the Board of Aldermen may approve or reject the nominations made to them as hereinafter provided*." The power to appoint to office is regarded as a political or executive power, to be exercised by the person authorized to execute, according to his discretion. Chief Justice Marshall, in Marbury *v*. Madison (1 *Cranch*, 137), says:

" When he (the President) has made an appointment, he has exercised his whole power, and his discretion has been completely applied to the case. If, by law, the officer be removable at the will of the President, then a new appointment may be immediately made, and the rights of the officer are terminated. But, as a fact which has existed cannot be made never to have existed, the appointment cannot be annihilated, and, consequently, if the officer is by law not removable at the will of the President, the rights he has acquired are protected by law, and are not resumable by the President. They cannot be extinguished by executive authority." * * * It is perfectly apparent, therefore, that the exercise of the power of appointment to office is not a legislative act.

Laws, or acts of the Legislature in the nature of laws, are repealable at the will of the law-maker, subject to the inhibition, in the Constitution of the United States, that no law shall be passed impairing the obligation of contracts. We have seen that no such power exists in reference to appointments to office. When the act is performed, it is irrevocable. Chief Justice Marshall further says, in the case above cited: "Mr. Marbury, then, since his commission was signed by the President and sealed by the Secretary of State, was appointed; and as the law creating the office gave the officer a right to hold for five years, independent of the executive, the appointment was not revocable, but vested in the officer's legal rights, which are protected by the laws of his country."

It was claimed on the argument, that, notwithstanding the appointment was given exclusively to the Common Council, and that the Mayor was not a member thereof, yet the action of the Common Council was subject to his approval or rejection,—as the two Boards had communicated to each other their action upon this subject in the form of a resolution, and as section 12 of the charter of 1830 requires that any act, ordinance, or resolution, which shall have passed the two Boards of the Common Council, before it shall take effect shall be presented to the Mayor for his approval. If he approve, he shall sign it; if he disapproves, he shall return it, within ten days, to the Board in which it originated, with his objections.

By section 13 it is provided that the Board, to which such resolution, act, or ordinance was returned, should proceed to re-

consider the same, and if a majority of the members elected should repass it, the same should be sent to the other Board, where the same was to be reconsidered, and if, thereupon, a like majority approved thereof, then the same should "*take effect as an act or law of the Corporation.*"

By section 14 of the same charter, it is provided, that if the Mayor should not return any act, ordinance, or resolution so presented to him, within the time limited for that purpose, it shall take effect in the same manner, that is, "*as an act or law of the Corporation,*" as if he had signed it.

By section 5 of the amended charter of 1853, a vote of two-thirds of the members elected to each Board is required to repass any act, resolution, or ordinance which shall have been returned by the Mayor with his objections.

By reference to section 1 of the amended charter of 1850, it will be seen that the legislative power of the Corporation of the city of New-York is vested in the Board of Aldermen and Board of Assistants, now Board of Councilmen.

It is apparent, from these provisions of the charter, that the action of the Mayor is confined to such matters as shall have passed both Boards, and which, with or without his sanction, would "*take effect as an act or law of the Corporation.*" We have seen that the law conferring the power of appointment of commissioners of deeds devolved its exercise upon the Common Council, and not upon the Corporation of the city. The act or resolution of appointment became an act of the Common Council, and not an act or resolution of the Corporation, and it is only in reference to the latter that the co-operation of the Mayor is invoked. The Mayor, as the executive of the Corporation, its chief officer, has properly confided to him a supervision of any act, ordinance, or resolution which is to take effect as an act or law of the Corporation; but it does not follow, from this, that such supervision or control exists as to executive duties devolved by law upon the Common Council.

It was conceded in the argument that, if the Common Council had met in a joint meeting of the two Boards, and made these appointments, the Mayor would have had no authority or right to have interfered.

I cannot see that the form of communication which the two Boards have adopted to communicate to each other their deter-

mination, in reference to these appointments, changes or affects, in the least, the powers or rights of any of the departments of the city government.

The Boards might have communicated with each other by letter, committees, or messengers. What the law requires is, that a majority of each should concur in an appointment; and when such concurrence is ascertained, the appointment becomes absolute, irrevocable, and complete for the term of the appointee. The Boards having adopted the form of a resolution for the purpose of more easily or conveniently communicating with each other, cannot in any way alter or affect the legality of their proceedings, and render inchoate or ineffectual what would otherwise be complete and final.

The result of my examination is, that the appointment of the applicant, Julius M. Achley, became complete by the action of the two Boards of the Common Council, without the concurrence of the Mayor, and that his assent or dissent thereto can in no way affect its validity.

That it was the duty of the county clerk, on being furnished, as he has been, with the certified copy of the proceedings of both Boards of the Common Council, showing said appointment, to administer to him the usual oath of office.

Upon such refusal, it is well settled that if the applicant is entitled to the office, it is the duty of this court to award a *mandamus* to the proper officer authorized to administer the oath of office, requiring him so to do. (*Exp.* Heath, 3 *Hill*, 42.)

A peremptory *mandamus* should issue. On an application for a *mandamus*, when both parties are heard, and there is no dispute about the facts, and the law is with the application, a peremptory *mandamus* will be granted in the first instance. (*Exp.* Rodgers, 7 *Cow.*, 526.)

Entertaining no doubts that the applicant has been duly and legally appointed a commissioner of deeds, and that it is the duty of the county clerk to administer to him the oath of office required by law, let a peremptory *mandamus* issue for that purpose.

As I understand that the refusal of the county clerk was based solely on the ground that it was important for the interests of the public to have the question of the right of the applicant to the office judicially settled, I shall award no costs against him.