THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE KEHOE, Appellant, *v.* THOMAS FITCHIE, Supervisor, etc., and Others, Respondents.

*Constitution, article* 10 — *term of office of supervisor of city ward not covered by — vacancy — veto by the mayor — chapter* 35 *of* 1893.

The office of supervisor of a city ward is not within the limitations and restrictions of article 10 of the Constitution, and the term of such office is wholly governed by legislative enactment.

The provisions of chapter 35 of the Laws of 1893, in reference to "the first annual election after the happening of the vacancy" refer to the election itself, and

not to the time prescribed in the Election Law of 1892 for the institution of the machinery for nominations.

By section 2 of article 10 of the Constitution the Legislature is granted complete power as to filling vacancies in offices other than those mentioned in section 1 thereof.

The failure to elect a successor of an officer does not render the office vacant, and when a supervisor of a city ward is elected he continues to hold office until his successor is elected, either at a general election or at a special election ordered by the Governor, in pursuance of section 4 of the Election Law.

Although the power granted to the common council of a city to fill vacancies in the office of supervisor is not legislative, but executive, the exercise of such power is subject to veto by the mayor of the city.

APPEAL by the relator, George Kehoe, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 1st day of February, 1894, denying the relator's motion that a peremptory writ of mandamus issue, without costs.

It appeared by the petition in this matter that George Kehoe was, on the 30th day of December, 1893, appointed supervisor of the eighth ward of the city of Brooklyn, by the common council of said city, to fill a vacancy then existing in that office. By the answer of the respondent it appeared that the minutes of the meeting containing this resolution of the common council were presented to the mayor of the city of Brooklyn on the 2d day of January, 1894, and that on the 12th day of January, 1894, the mayor vetoed the minutes, or that portion of them by which Kehoe was appointed supervisor.

It further appeared by the affidavit of the respondent that on October 25, 1893, Supervisor Henry F. Stickevers died, creating a vacancy in the office of supervisor for the eighth ward of the city of Brooklyn. This was twelve days prior to election day, 1893. On November 20, 1893, the common council of Brooklyn, pursuant to provisions of chapter 35 of the Laws of 1893, appointed the relator and appellant supervisor to fill the vacancy in the eighth ward supervisorship.

On December 29, 1893, the relator and appellant filed his resignation as such supervisor with the city clerk.

The president *ex officio* of the board of supervisors of Kings county refused to recognize Kehoe as a member of such board.

*Stapleton & Miles,* for the appellant.

*George F. Elliott,* for the respondents.

Order affirmed on opinion of CULLEN, J., at Special Term.

Present — BROWN, P. J., DYKMAN and PRATT, JJ.

The opinion of the Special Term was as follows:

CULLEN, J. :

Had the relator seen fit to stand upon his original appointment instead of resigning and receiving a subsequent appointment, his right to hold the office of supervisor until it might be filled at an election by the People would have been beyond controversy. That the office of supervisor of a city ward is not within the limitations and restrictions of article 10 of the Constitution is settled by authority. (*People ex rel. Clancy* v. *Supervisors,* 139 N. Y. 524; *People ex rel. Hatfield* v. *Comstock,* 78 id. 356.) The term of office of the relator is, therefore, wholly governed by the legislative enactments on the subject. I adhere to the view expressed on the argument as to the construction of the act of 1893 (Chap. 35), that "the first annual election after the happening of the vacancy" refers to the election itself, and not to the time prescribed in the Election Law of 1892 for the institution of the machinery for nominations, etc. It would not aid the relator's contention to construe the term "annual election" as "annual election at which the vacancy can be filled," for the statute of 1893 itself provides that the vacancy shall be filled at the general election "preceding such time," *i. e.* the beginning of the next political year after the happening of the vacancy. To give effect to this claim I must hold that the direction as to "annual election" did not mean the occasion or time stated in the statute, but an entirely different time, to wit, the fifteenth day of October preceding the annual election. This is a license of construction for which there is no authority, especially when it is considered that there is a class of public offices, vacancies in which must by the Constitution be filled at the annual elections, even if such vacancies occurred the very day before the election. I refer to those offices mentioned in article 10 of the Constitution. Here the Legislature in the statute of 1893 has adopted the very words of the Con-

stitution, and I think that the same construction must obtain in one case as the other.

But though the term of office for which the common council could fill the vacancy was limited to the first of January ensuing, it does not follow that such term might not be extended. By the Constitution, article 10, section 2, the Legislature is granted complete power as to filling vacancies in office other than the offices mentioned in section 1. (*People* v. *Comstock*, *supra*.) The legislation on that subject is found in the provisions of the Public Officers Law of 1892 (Chap. 681) which so far as material here are substantially re-enactments of the Revised Statutes. The 20th section of the act is as to the creation of vacancies. In the enumeration of events which shall render offices vacant a failure to elect a successor in office is not to be found. The reason of this is manifest. Section 5 of the same act provides that every officer (with certain exceptions which do not include the office here in dispute), having entered upon the duties of his office, shall continue to discharge the duties after the expiration of his term until his successor shall be chosen and qualified, except that the office shall be deemed vacant for the purpose of choosing a successor. The electors of the eighth ward failed to elect a supervisor at the last general election. This, under the provisions of the law cited, continued the term of any supervisor that might have been chosen by the common council of 1893, after the expiration of that year, until his successor should be elected, either at the general election or at a special election which the Governor might order under section 4 of the Election Law.

This brings us to the validity of the relator's appointment by the common council, and the question here involved is the power of the mayor to veto the action of the common council in making such appointment. As to this question I feel bound by authority and not at liberty myself to determine it as an open question. It should be conceded as claimed that the power granted to fill vacancies in the office of supervisor is not legislative but executive. On this ground it has been held at Special Term in two cases that the veto did not apply to appointments. (*Achley's Case*, 4 Abb. Pr. 35 [1856]; *North* v. *Cary*, 4 T. & C. 357 [1874].) Both decisions present strongly the arguments in favor of the position. But the reverse

rule has been held by the courts in this district, and their decisions have been affirmed in the Court of Appeals.

In *Cassidy* v. *City of Brooklyn* (60 Barb. 105) it was held that the mayor could veto a consent of the common council to an appointment of a clerk made by one of the justices of the peace. This case was affirmed by the Court of Appeals (47 N. Y. 659) on the opinion below. The same question again arose in *People ex rel. Ennis* v. *Schroeder* (12 Hun, 413; affd., 76 N. Y. 160), and the decision in the *Cassidy* case was followed. In the opinion, delivered in the Supreme Court by Justice GILBERT, it is said: " The reasoning in *Achley's Case* (4 Abb. Pr. 35), so far as it went to restrict the operation of a similar provision of a statute relating to the city of New York to resolutions of a legislative as contra-distinguished from those of an executive nature, must have been disapproved by the Court of Appeals. There is no such discrimination in the statute applicable to this case, and we cannot interpolate one into it."

In the opinion delivered by Judge MILLER in the Court of Appeals he says, referring to the acts of the common council: " The right to veto ordinances and resolutions clearly extended to all acts of that body whether legislative or otherwise, and in no sense can the provision (of the charter) in act of 1873 constituting the common council, be construed as interfering with the power of the mayor to interpose his objection to the appointment of the relator. The mayor had no right to act as a legislator, but he retained in full force the right to disapprove of all ordinances, acts and resolutions which did not meet his approval."

I do not see that this case can well be distinguished from those cited, and I am constrained to hold the appointment of relator invalid.

Motion denied, without costs.

The respondent should stipulate to argue any appeal from this decision at the next General Term.