JOSEPH S. CASLER and WILLIAM CONNORS, Plaintiffs, *v.* JOHN M. TANZER, as Mayor, EARL C. SEARIGHT and Others, as Aldermen, and J. LEO SHEPARDSON, as City Clerk, Respectively, of the City of Little Falls, New York, Defendants.

Supreme Court, Herkimer County, April, 1928.

*Arthur J. Foley,* for the plaintiffs.

*James A. McTiernan,* for defendants Zeman, Gressler, Tighe and Roa.

*J. Albert Evans,* representing John M. Tanzer, as mayor of Little Falls, and others.

*Myron J. Bronner,* for John M. Tanzer, as mayor, and others.

DOWLING, WILLIAM F., J. By chapter 565 of the Laws of 1895, effective May 8, 1895, inhabitants of the territory known as the city of Little Falls, N. Y., became a municipal corporation. By article 4 of the charter granted to the city of Little Falls there was created a common council to be composed of the mayor and aldermen of the city. Section 50 of article 4 provides that the mayor of the city shall be the presiding officer of the common council, and shall have no vote therein except in case of tie, when he shall have the casting vote. Section 50 also provides that a majority of the aldermen present and voting at any meeting of the common council at which a quorum shall be present, shall be sufficient to pass any resolution or ordinance, except such ordinances as might involve the expenditure of money or the collection of money by tax. Section 50 also provides that the ayes and noes shall be called and recorded on all resolutions authorizing or involving the expenditure of money or collection of money by tax. Section 51 provides " Except rules for the government of the common council and appointments to office, no resolution or ordinance of the common council shall have any force or effect, or be deemed to have been enacted by the common council, unless either it be approved by the mayor, or be not returned by the mayor to the city clerk within ten days after the receipt thereof by him, or unless it be passed over the mayor's veto in pursuance of this section." By section 19 of article 2 it is provided that city officers appointed by the common council can only be removed upon charges after notice of hearing. Section 36 of article 3 provides that the city clerk shall be *ex officio* clerk of the common council; that he shall keep the minutes of the meetings of the

common council, and shall record them in books to be kept for the purpose of preserving proceedings of the common council.

Section 30, article 3, provides that each officer of the city shall, before he enters upon the duties of his office, take and file his official oath in accordance with article 13 of the Constitution and section 10 of the Public Officers Law. Section 11 of article 2 provides for the election of three assessors, the term of office of each of them to be three years. Section 157 of article 9 provides that immediately after the annual charter election, the city assessors shall proceed to make up the annual assessment rolls in the several wards for city taxes, which they shall complete and file with the city clerk on or before the fifteenth day of April following. The section also requires the assessors to hear objections to said rolls, beginning on the first Tuesday of April in each year, and continue to hear the same for four days thereafter, and they shall give notice of the hearing of such objections for two weeks preceding said first Tuesday of April. Section 158 of article 9 provides that immediately after the filing of said corrected assessment rolls with the city clerk, the common council shall cause the amount authorized to be raised for all city purposes with certain exceptions. A completion of the rolls must be effected before May first of each year. On August 2, 1921, pursuant to the provision of chapter 300 of the Laws of 1921, the city of Little Falls undertook to create and establish by ordinance of the common council a department of assessment and taxation. This ordinance was apparently declared void, and in place thereof the common council passed a local law abolishing said department of assessment and taxation, and creating in its place three offices of assessor, to be filled by one incumbent each, as follows: During the month of January, 1928, the common council shall appoint one assessor for a term commencing February 1, 1928, and ending December 31, 1929; one assessor for a term commencing February 1, 1928, and ending December 31, 1931, and one assessor for a term commencing February 1, 1928, and ending December 31, 1933, said three appointments to be made in the same manner and with the same force and effect as if to fill a vacancy in an elective office occurring otherwise than by expiration of term, except that the terms of office of each shall be as herein provided. The three assessors thus chosen shall have all the powers conferred upon the assessor or assessors or board of assessors by the charter of the city of Little Falls, and all the rules, regulations and ordinances of said city and the general laws of the State of New York applicable thereto, and shall be subject to all the liabilities, obligations and restrictions imposed thereby, and shall perform in every respect all the duties provided by said charter and said rules and regulations

and ordinances and said State laws for assessors to perform, at the same time and in the same manner and with the same force and effect as provided thereby.

On January 3, 1928, a regular meeting of the common council of the city of Little Falls was held. Hon. John M. Tanzer, as mayor of Little Falls, presided at such meeting. Immediately after the reading of the inaugural message, Alderman Searight offered the following resolution and moved its adoption:

" *Resolved* that Harry Ruby be and is hereby appointed as assessor for a term beginning February 1, 1928, and ending December 31, 1933, that Senior Mitchell be and is hereby appointed as an assessor for a term beginning February 1, 1928, and ending December 31, 1931, and that George Eysaman be and is hereby appointed as an assessor for a term beginning February 1, 1928, and ending December 31, 1929."

Before the resolution was put to a vote, Alderman Zeman offered the following amendment to the aforesaid resolution and moved its adoption:

" *Resolved* that this be amended and the name of Joseph S. Casler be appointed in the place of George Eysaman and that William Connors be appointed in place of Harry Ruby. Roll call on amendment.

" Ayes: Aldermen Roa, Gressler, Tighe, Zeman.

" Nays: Aldermen Van Allen, Searight, Nightingale."

Next in order of procedure, Alderman Searight offered the following resolution and moved its adoption:

" *Resolved* that we do now recess for a period of ten minutes.

" Roll call.

" Ayes: Aldermen Van Allen, Searight, Nightingale.

" Nays: Aldermen Roa, Gressler, Tighe, Zeman."

So far as appears from the minutes of the meeting of said council, as kept by the city clerk, no further proceeding was had or taken by the council at the meeting in question relative to the appointments of city assessors.

Apparently, the plaintiffs, following the meeting, supposed that they had been duly appointed assessors of the city of Little Falls, and they and Senior Mitchell, some date prior to the commencement of this action, took the oath of office as required by the aforesaid charter provision.

The mayor of the city and the aldermen who voted against the amendment to the original resolution aforementioned apparently were at all times of the opinion that no assessors had been in fact appointed, as the original resolution, as amended, was never put to a vote. A notice of a special meeting of the common council

was mailed to the aldermen of the common council by the city clerk, on the 19th of January, 1928, calling for a special meeting of the council to be held on the 20th of January, 1928, at eight P. M., for the purpose of completing the business of the appointment of assessors. Upon learning of this proposed special meeting, the plaintiffs instituted this action, wherein they pray for judgment that the defendants herein be enjoined and restrained from taking any further action at any meeting of the common council of the city of Little Falls, N. Y., or any adjournment thereof, declaring the offices of assessors of the city of Little Falls vacant, until such time as charges may be preferred and sustained, warranting the removal of the plaintiffs herein, or until the plaintiffs have voluntarily resigned or refused to act as such assessors, and that the defendants be restrained and enjoined from holding a meeting on January 20, 1928, at eight P. M., or at any other time, for the purpose of taking action and completing the business of the appointment of the present board of assessors of the city of Little Falls.

Upon the verified complaint herein, and affidavits of the plaintiffs, on the 20th day of January, 1928, an order to show cause was granted by Hon. CHARLES BELL, county judge of the county of Herkimer, N. Y., returnable at a Special Term of the Supreme Court in session at Utica, N. Y., on the 4th of February, 1928, why a temporary restraining order should not be granted, pending the determination of this action. Said order to show cause contained a stay, restraining the defendants from holding any meeting of the common council of the city of Little Falls for the purpose of declaring the offices of assessors vacant, and taking any further action with regard thereto, or from holding any meeting for such purpose. By a further order, dated January 21, 1928, said county judge modified the original order granted by him, so as to make the same returnable on the 23d of January, 1928. This action is not brought to test the title to office, but is brought to restrain the defendants from taking any action relative to the completion of appointment of assessors as aforementioned. This court will, therefore, go into the proceedings of the common council sufficiently to determine whether or not the plaintiffs have such a claim to office as entitled them to a hearing. In other words, to ascertain whether or not their title to office is free from reasonable doubt. The common council of the city of Little Falls, N. Y., when it organized, adopted Cushing's Manual of Parliamentary Procedure as its guide. Section 1445, page 564, of Law and Practice of Legislative Assemblies, by L. S. Cushing, provides as follows: " Motions to amend, being previous in their nature to the motion or question which it is proposed to amend, take precedence of or

supersede that question; because, in whatever form the nature of the amendment may require the question to be taken, the substantial question first decided is, whether the motion in its original form, or as amended, shall be the question before the house, and not whether the original motion shall be adopted."

From the foregoing provision, it is apparent that an amendment to a motion or resolution takes precedence of the original motion. The original motion cannot be disposed of until the proposed amendment is disposed of, unless the amendment is clearly a substitute for the original motion. A passage of the amendment has no effect other than to amend the original motion except it is a substitute. Where it simply amends the original motion and is not a substitute for it, then the original motion must be put. Had the amendment in this case also proposed a name in place of Senior Mitchell, the amendment would clearly have been a substitute for the original motion, and if carried, would have accomplished the election of the three named in the amendment. As the record stands, no vote was ever taken upon the original resolution, at least so far as the appointment of Senior Mitchell was concerned.

In the case of *Davies* v. *City of Saginaw* (87 Mich. 439) a somewhat similar situation arose. The court said (at p. 444):

" On May 2, 1887, the board of public works reported the bid of Scanlan & Crowley for the paving of Genesee avenue, and recommended that the same be accepted, ' provided the council are satisfied that the prices given are reasonable.'

" The following action of the council was had thereon:

" ' Ald. Comstock moved that the bid of Scanlan & Crowley for paving Genesee avenue, from Hoyt to Hartsuff streets, be referred back to the board of public works, with instructions to readvertise for proposals for such improvement.

" ' Ald. Becker moved, as an amendment, that the board of public works be instructed to contract with Scanlan & Crowley in accordance with their said proposal.

" ' Ald. Maier moved, as a substitute, that the matter be referred to the committee on paving. Substitute lost.

" ' The question was then had on the amendment of Ald. Becker. The same was carried by a vote of 10 ayes to 6 nays.'

" It is claimed that this action was a nullity, for the reason that, after the adoption of Ald. Becker's amendment, the original motion as amended was not put. But Ald. Becker's amendment was in fact a substitute, and it was unnecessary to put the original motion, although that is a question of parliamentary law, the judgment of the council upon which the courts will not disturb."

To supplement the minutes of the said meeting of the common council, the plaintiffs attempt to show that the presiding officer declared that no further action was necessary to complete the appointment of the three assessors called for in said resolution as amended, and for that reason, that the resolution, as amended, was not put. What the council actually did, and not what the presiding officer thought necessary, is controlling. It is not competent for the members of a legislative body even to give evidence of what they understood was the effect of the action which the record shows they took. The record of the proceedings is controlling on that question. In the case of *Whitney* v. *Village of Hudson* (69 Mich. 189) the court said (at pp. 201, 202): " Counsel for defendants insists that strict parliamentary rules should not be applied to these municipal bodies exercising legislative functions; that if they adopt or pursue a method of proceeding understood by themselves, which arrives at substantial results, their action should not be overthrown upon any technical rules or strict construction of parliamentary law. We are of the same opinion. We do not think it competent, however, for the individuals who composed the legislative body to give evidence of what they understood was the effect of the action which the record shows they took. This must be gathered from the whole record of their proceedings, and from this determined whether what they did, or omitted to do, was essential to the validity of the proceedings."

The declaration of a presiding officer that an officer is elected as a result of a ballot, is not equivalent to giving a casting vote. (29 Cyc. 1691, subd. 4c.) A presiding officer derives his powers from the assembly over which he presides. He is only a means for enabling the body to exercise its powers in an orderly way. His opinion as to what was necessary cannot be taken as a substitute for the doing of the necessary thing. In *Hicks* v. *Long Branch Commission* (69 N. J. Law, 300) the court said (at p. 305): " The general doctrine regarding the authority of one chosen to preside over a deliberative body was vividly stated on a memorable occasion, when in 1642 the king entered the House of Commons to compel the arrest of the five members whom before the peers he had accused of treason. To his demand whether they were present in the House, addressed to Speaker Lenthall, the latter answered: ' I have neither eyes to see nor tongue to speak in this place, but as the House is pleased to direct me, whose servant I am here,' The same metaphors had previously been used by Speaker Glanvylle. who declared himself to be ' the mouth, indeed the servant of all the rest of the members of the House, to collect faithfully and readily the vote and genuine sense of a numerous assembly,' and

also in the House itself where the speaker was designated as 'but the servant to the House and not a master or a master's mate.'

"This view is approved by writers on parliamentary law. 2 Hats. Prec. Par. 230; Cush. Law & Pr. Legis. Assem. § 294. It appears reasonable, when it is remembered that the authority of a chairman is derived wholly from the assembly itself, and that he is only a means provided for enabling the body to exercise its powers in an orderly way. His functions are utterly unimportant save as they are auxiliary to that end."

From the foregoing, it is apparent that the plaintiffs' title to the offices which they claim is not free from reasonable doubt.

Plaintiffs, on the one hand, contend that they are two of the duly appointed assessors of the city of Little Falls, but on the other hand, they are apprehensive that the council may have in mind the doing of something which will deprive them of their offices. If they were duly appointed assessors of the city of Little Falls, then they have nothing to fear, no matter what action the council may take relative to their appointments, as such action would be illegal and *ultra vires*. If they were not duly appointed assessors of the city of Little Falls, then they should welcome any action the council might take, either to strengthen their own appointment or to appoint others in their places. If they were duly appointed assessors of the city of Little Falls, they can be removed only upon charges and after a full hearing. By the charter and ordinance above referred to, the appointees for assessors hold for a definite term. Upon taking the oath of office, the title of the office vests in the appointees. Once the act of appointment is performed, and the appointee complies with the requirements of the statute by taking his oath of office, his appointment is irrevocable. In *Matter of Fitzgerald* (88 App. Div. 434) the court said (at p. 440): "I think the council had no power by any resolution it might enact March twentieth to withdraw and annul the consent to this appointment, previously given on March second, nor could the mayor and council together, at that time, annul or recall that appointment and make it void from the beginning. By the charter the appointee holds for a definite term; he had been vested with the office, and if he was to be deprived of it it must be by removal in the manner provided by the charter.

"It was said in *Achley's Case* (4 Abb. Pr. 37): 'The exercise of the power of appointment to office *is a purely executive act*, and when the authority conferred has been exercised it is final for the term of the appointee. * * * Laws or acts of the Legislature in the nature of laws are repealable at the will of the law-maker, subject to the inhibition in the Constitution of the United States that no

law shall be passed impairing the obligation of contracts. * * * No such power exists in reference to appointments to office. When the act is performed it is irrevocable.' (See, also, *Marbury* v. *Madison*, 1 Cranch, 137; *People ex rel. Mosher* v. *Stowell*, 9 Abb. N. C. 456.) "

The court is asked to restrain the common council from meeting to take action relative to the appointment of assessors of the city of Little Falls on the theory that such action would be inimical to the interests of the plaintiffs. There is nothing in the moving papers to indicate that the council proposes to take any such action. There is no claim of fraud or bad faith in the complaint or in the moving papers which would warrant this court in restraining the common council of the city of Little Falls in whatever action it may deem wise to take relative to the appointment of assessors of said city. On the other hand, the court must assume that the said council intends to act legally and justly.

This court has no power to determine whether or not plaintiffs were duly appointed as assessors of the city of Little Falls, and the court does not pass upon that question. In view of the fact that assessors, whoever they may be, must complete their work by May 1, 1928, it is extremely important that all questions relating to their appointments be settled forthwith. The complaint and the moving papers fail to establish such a state of facts that would warrant this court in granting the temporary restraining order demanded herein. The motion for such order is denied, and the stay granted as aforesaid is vacated, with ten dollars costs to the defendants represented by J. Albert Evans.

Ordered accordingly.