THE PEOPLE ex rel. JEREMIAH CLANCY, Respondent, *v.* THE BOARD OF SUPERVISORS OF WESTCHESTER COUNTY, Appellant.

The provision of the State Constitution (§ 18, art. 3), prohibiting the passage of a local or private bill "providing for election of members of boards of supervisors" applies simply to town, not to city supervisors, and so, a city charter providing for the election of supervisors in each ward is not within the constitutional prohibition.

Accordingly *held*, that the provision of the charter of the city of Yonkers as amended in 1892 (§ 4, chap. 54, Laws of 1892), allowing a supervisor of each ward to be "elected by the electors of each ward," was not violative of said constitutional provision and was valid.

Reported below, 69 Hun, 143.

(Argued October 16, 1893; decided October 24, 1893.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made May 10, 1893, which affirmed an order of Special Term granting an application for a writ of peremptory mandamus requiring the board of supervisors of Westchester county to recognize Jeremiah Clancy, the relator, as a supervisor of the fourth ward of the city of Yonkers, and permit him to act as a member of said board.

The facts, so far as material, are stated in the opinion.

*W. H. Robertson* and *Wm. Romer* for appellant.   The legis-
lature is prohibited from passing a local law providing for
election of members of boards of supervisors.   (Const. N. Y.
art. 3, §§ 18, 25.)   This law divides the city into five wards.
It declares that the electors of each ward shall elect a super-
visor for such ward.   It requires such supervisor to be a resi-
dent of the ward for which he is elected.   The original act
provides for the election of only one supervisor.   His district
embraces the whole city.   The amended act provides for the
election of five  supervisors, and establishes five supervisors'-
districts.   These are clearly provisions for the election of mem-
bers of  boards of supervisors.   (Laws of 1881, chap. 184;
Laws of 1892, chap. 54; *Haskell* v. *Hoffman*, 60 How. Pr.
324; 24 Hun, 142.)   Where another remedy exists the writ
will not issue.   (*People ex rel.* v. *Chapin*, 104 N. Y. 102.)
The relator's remedy, if any, is by quo warranto, and not by
mandamus.   (*Haskell* v. *Hoffman*, 60 How. Pr. 324; *People
ex rel.* v. *Chapin*, 104 N. Y. 99; *People ex rel.* v. *Common
Council*, 78 id. 61; *People ex rel.* v. *Laidlaw*, 102 id. 588.)
The wards created by the act of 1892 are not towns within
the meaning of the statute entitling each town to a supervisor.
It does not provide for them the essential features of the
government of townships throughout the state.   (*People ex
rel.* v. *Bd. Suprs.*, 20 N. Y. Supp. 470.)   The amended act does
not declare the supervisor of the fourth ward of said city a
member of the board of supervisors of the county of West-
chester, or confer upon him the powers and duties of super-
visors of towns, an omission of great significance, and clearly
shows that the legislature intended him to be, as he undoubt-
edly is, merely a city officer.   (Laws of 1891, chap. 184, § 16;
Laws of 1892, chap. 54, § 1; R. S. [7th ed.] § 3.)

*Joseph F. Daly* for respondents.   The act of the legislature
by which the relators became members of the board of super-
visors of the county of Westchester is not a local act, but is
a general law applicable to the whole state.   (Laws of 1892,
chap. 686, § 10.)   The constitutional provision that the legis-

lature shall not pass a private or local bill, providing for the election of members of the boards of supervisors, applies only to the manner of electing supervisors, and was not intended to limit the power of the legislature to equalize representation in the various counties by saying what persons should compose the boards of supervisors. (Const. N. Y. art. 3, § 22; Laws of 1892, chap. 682, art. 2, § 10.) The position taken by the relators, that the legislature can provide for the election of supervisors of wards and cities by local act, has been the policy of the legislature and counties of the state ever since the passage of the amendment of 1874. (Laws of 1880, chap. 40; Laws of 1879, chap. 53; Laws of 1883, chap. 523; Laws of 1886, chap. 84; Laws of 1892, chaps. 143, 686.) The contention of the defendant that there is no clause in the Yonkers charter making these supervisors members of the county board is not sound. (Laws of 1891, chap. 184, § 16; Laws of 1892, chap. 686, § 10.) Amendments to existing acts are not forbidden by the clause in the Constitution providing that the legislature " shall not pass a private or local bill in any of the following cases." (*Read* v. *Smith*, 39 Hun, 223.) The board of supervisors possesses no power to determine who are members of that body unless the authority of the person to sit is contested by some other person claiming the right as supervisor. The boards of supervisors possess no powers, except those given to them by the Constitution and by the statutes of the state. The Constitution creates them and provides that the legislature shall give them such power of local legislation and administration as it may from time to time deem expedient. (Const. N. Y., art. 3, § 23.)

FINCH, J. By an act of the legislature amending the charter of the city of Yonkers (Laws of 1892, chap. 54, § 4), it was allowed a supervisor for each ward, to be " elected by the electors of their respective wards." At the annual town election in 1892, no supervisor for the whole city was elected, and Jacob Read, who was chosen the previous year, claimed to hold over, and be and remain the sole supervisor of the city. But on the

last Tuesday of March in that year the relator was duly elected supervisor of the fourth ward by virtue of the amendment of the charter allowing a supervisor for each ward. The Revised Statutes provide, and the County Act of 1892 (Chap. 686, art. 2, § 10) substantially repeats, that the board of supervisors shall consist of the supervisors of the cities and towns in each county. The relator, therefore, if legally elected a supervisor for the fourth ward of the city, became, under the general statute, a lawful member of the board of supervisors of Westchester county, and entitled to a seat in that body. When the board met, Jacob Read appeared and claimed to be recognized as the sole supervisor of Yonkers, upon the ground that the charter amendment of 1892, giving supervisors to the several wards, was in violation of the Constitution and null and void. The board, acting upon that theory, refused to admit the relator and denied his right to act with them, although he appeared and demanded his seat, and Read was recognized as supervisor of Yonkers by reason of his holding over in default of a successor duly elected. The relator, therefore, applied to a Special Term of the Supreme Court for a peremptory mandamus, requiring the board to recognize him as a supervisor of the city of Yonkers, and permit him to act as a member of the board. The writ was awarded, whereupon the defendant appealed to the General Term, which affirmed the order, and the board then took an appeal to this court.

The sole question thus presented is whether the act of 1892, amending the city charter, is constitutional. In defending their position the board rely upon article third, section eighteen of the Constitution, which commands that "the legislature shall not pass a private or local bill in any of the following cases," one of which is "providing for election of members of board of supervisors." It is not altogether easy to understand what this provision was intended to forbid. Members of the board of supervisors are never elected *as such*, but hold that office and perform its duties under a general law, and by force of their election as supervisors of separate towns

or cities. We shall better understand what the prohibition was intended to cover, if we first consider the situation as to supervisors of towns, and then as to supervisors of cities.

The Constitution provides (Art. 2, § 5) that "all elections by the citizens shall be by ballot, except for such town officers as may by law be directed to be otherwise chosen." Here was permission for the legislature to authorize the election of town supervisors, not only by ballot, but after the old town meeting fashion of calling for the ayes and noes, or by a show of hands or other division. As to some town officers, the statute still permits these ancient methods of choice. The legislature ordained (1 R. S. part 1, ch. 11, art. 1, title 3) that the supervisor should be elected by ballot, and also other named town officers, and then the law proceeds thus : " All other town officers shall be chosen either, 1, by ballot, 2, by ayes and noes, 3, by the rising or dividing of the electors, as the meeting may determine." So that, under the fundamental law, it was competent for the legislature to permit the election of a supervisor by either one of the three specified methods of voting, so far as towns were concerned.

The Constitution further provided (Art. 3, § 22), in constituting the board of supervisors, that it should be " composed of such members and elected in such manner and for such period as is or may be provided by law." That is, what members should constitute the board, the manner of their election and their terms of office were details committed to the discretion of the legislature, and that body could enact laws providing for the election of supervisors by ballot, or ayes and noes, or an actual division, and could fix their terms of office. It could also, as it did, determine the times and places of holding such elections. (1 R. S. pt. 1, ch. 2, title 2, art. 1, §§ 1, 2.) Now, all these details could be, as they had been, properly regulated by general laws applicable to all the towns alike, and great mischiefs would result if, by the operation of local laws, all uniformity should be lost, and each town be suffered to go its own independent way. And hence it was that in 1874 the discretion of the legislature in these respects as to the import-

ant office of town supervisors, which had been exercised by general laws, was required to be so exercised in that manner only, and never by mere local bills. The prohibition, therefore, had a wide range of application to town supervisors, and prevented the passage of local bills giving one town power to choose its supervisor by a different mode of voting, at a different dictation of time and place, and for different official terms from other towns of the state.

If, then, the constitutional provision related to city supervisors, it would be natural to confine it to a similar class of details; but I do not think it relates to them at all, because of the manner in which they come into existence. Cities acquire their corporate life by force of special, several and purely local acts of the legislature, which creates and frames them in the regular exercise of governmental functions. They have never been created by general laws, and cannot easily or prudently be organized in any other method than by special and local enactments. It may be possible to frame some general law under which cities could be organized, but difficulties would spring up in many directions, and the probable result would be some broad and general outline still requiring to be supplemented by more or less of special legislation. Wards would be unequal, and to give a supervisor in all cases to each might in some instances give the city more power in the county than would be just, or more even than was desired. But, conceding the possibility, it had never been realized or attempted to be realized when section 18 of the Constitution was adopted, and cities had always been organized by special charters. The Constitution permitted that mode of organization, for in requiring villages to be chartered by general laws and omitting cities, it recognized the propriety and necessity of leaving the latter to be organized by local laws. But that permission must necessarily extend to and cover all the proper subjects of a city charter, and among them are, undoubtedly, the division into wards and the allowance of a supervisor in each, or in so many as should be prudent and satisfactory. A charter which left that out and excluded the city from having a supervisor

530    People ex rel. Clancy *v.* Supervisors.    [Oct.,

Opinion of the Court, per Finch, J.    [Vol. 139.

at all would be a maimed and imperfect exercise of the power of city organization. And a law which so creates and charters and organizes a city is not, within the constitutional meaning, a local law "providing for the election of members of the board of supervisors," because as a local law for the organization of a city government, it divides the municipal area into wards and gives each its own supervisor. Any other view brings the constitutional provisions into discord and contradiction. To uphold the contention of the defendant will compel us to say that what the Constitution permits to be done by a local law, it also forbids to some extent by mere indirection and inference; that its authority to organize city governments is maimed and distorted by a prohibition applying to one of its necessary and customary details; and that the framers of the Constitution meant not only to prevent one group of obvious evils, but in the process to introduce and set in operation another. A general law for the organization of cities, if possible, would be quite likely to prove inadequate. A city on the seaboard has necessities widely different from one inland, and the care of a large population is quite unlike that of a small one. The work is best done by a local charter, and to say that because of that the framers of the Constitution, and the People in adopting it, meant to deprive a city of its ward supervisors, and, as a consequence, of adequate representation in the county legislature, and that too, not directly, but through an inference from a prohibition having its own proper field of operation, is to misapprehend the constitutional intent, and set the instrument in some degree at war with itself. The legislative and judicial construction has been very generally in the direction of that which we here adopt. Cities all over the state have been supplied with supervisors by the local law of their charters, and while consequences should never frighten us from seeking out and declaring the truth, they are sometimes valuable aids in ascertaining what that truth really is. The courts have many times in the construction of section 18 been required to prefer the spirit and intent of the law to its rigid and arbitrary letter; and in one case, at least, the

necessity of local legislation to accomplish a lawful and useful result was deemed a sufficient reason for holding that the prohibition of section 18 was not intended to apply, and should not apply, to prevent the desired result. (*In Matter of Application of Union Ferry Co.*, 98 N. Y. 150.)

And so, taking into view all the provisions relating to the general subject, we are of opinion that an act adopting or amending a city charter, although it provides for ward supervisors, is not an act " providing for the election of members of the board of supervisors," notwithstanding the fact that under a general law such supervisors become *ex officio* members of such board.

It follows that the peremptory mandamus was properly allowed, and the order should be affirmed, with costs.

All concur.

Order affirmed.