THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANK B. COTTE, Respondent, *v.* FRANKLIN C. GILBERT, Clerk of the Town of Hempstead, County of Nassau, Appellant.

Second Department, March 19, 1919.

**Constitutional law — private or local bill fixing date of election and term of supervisors.**

Chapter 126 of the Laws of 1917, entitled " An act to amend the Town Law, in relation to town meetings in the county of Nassau, and to terms of office of town officers heretofore and hereafter elected therein, and the filling of vacancies," which assumes not only to fix the day for the election of supervisors of the various towns in said county contrary to the express will of the board, but provides when their terms shall begin and end, is in violation of section 18 of article 3 of the State Constitution prohibiting the passage of private or local bills for the election of members of the boards of supervisors.

BLACKMAR and JAYCOX, JJ., dissented, with opinion.

APPEAL by the defendant, Franklin C. Gilbert, as clerk, from an order of the Supreme Court, made at the Nassau Special Term and entered in the office of the clerk of the

county of Nassau on the 17th day of March, 1919, directing the issuance of a writ of peremptory mandamus commanding the town clerk of the town of Hempstead in Nassau county to accept and file a certain certificate of nomination.

*M. Linn Bruce,* for the appellant.

*Alfred A. Gardner,* for the respondent.

KELLY, J.:

In 1899, pursuant to the provisions of the then existing law, the board of supervisors of Nassau county fixed the first Tuesday in April in odd-numbered years as the day for holding the biennial town meetings and such meetings have accordingly been held on that day to and including the biennial town meeting on April 3, 1917. The present Town Law (Consol. Laws, chap. 62 [Laws of 1909, chap. 63], § 40) provides that the electors of a town shall biennially on the second Tuesday in February assemble and hold meetings, but the board of supervisors of any county are authorized by resolution to fix a time when such biennial town meetings shall be held in the county provided the day fixed shall be either between February first and May first, inclusive, or on the first Tuesday after the first Monday in November of an odd-numbered year. The day upon which this ancient institution, the town meeting, has been held in Nassau county has thus remained as originally designated by the local officials for more than twenty years — since the erection of the county itself — despite an abortive effort in 1901 to change the date. (*People ex rel. Smith* v. *Weeks,* 176 N. Y. 194.) The Constitution of the State of New York (Art. 3, § 18) prohibits the Legislature from passing a private or local bill " providing for election of members of boards of supervisors " and directs that " the Legislature shall pass general laws providing for the cases enumerated in this section."

The history of constitutional reform in this State shows an increasing purpose to stop local measures, and put them under general laws. The Convention of 1867 sought to prohibit local or special laws " in any case for which provision now exists or shall hereafter be made by any general law." (2 Lincoln Const. Hist. 400, 437.)

In recommending a Constitutional Commission in 1872 Governor Hoffman referred to the numbers of local laws during the preceding twenty years, adding: "Uniformity of the several classes of local governments — counties, towns, and villages — ought to be secured by constitutional guaranty, so as to prevent special legislation with regard to them." (2 Lincoln Const. Hist. 499; 6 Lincoln Messages from the Governors, 402.)

Accordingly the Commission of 1872 recommended the amendment of the Constitution, now section 18 of article 3, which prohibits *inter alia* any special or local bill "providing for election of members of boards of supervisors."

After this had been adopted by the people, Governor Tilden in his message in 1875 said: "The section added to Article III as section 18 requires the passage of general laws providing for the cases in which special legislation is prohibited by that section. Many of these cases are within existing general laws, and with respect to several others no immediate legislation seems to be required. * * * The provision prohibiting special legislation in the cases specified is the amendment from which the largest benefits have been anticipated." (2 Tilden's Writings & Speeches, 29; 6 Lincoln Messages from the Governors, 726.)

Despite the fact that the local legislative body vested with full power to change the date of the town meeting, has not done so, and despite the constitutional prohibition, the Legislature in 1917 enacted chapter 126 of the laws of that year, entitled, "An act to amend the Town Law, in relation to town meetings in the county of Nassau and to terms of office of town officers heretofore and hereafter elected therein and the filling of vacancies." The act in question purports to amend the Town Law by inserting therein a new article, to be article 31-a, and which is entitled, "Town Meetings in the County of Nassau," the new matter to be contained in an additional section designated section 588, "Time of meetings; special provision as to certain officers heretofore and hereafter elected." This new section, which of course only applies to the towns in Nassau county, provided that after the biennial town meeting on the third day [the first Tuesday] of

April, 1917, all subsequent town meetings shall be held on the general election day in November in every odd-numbered year. The relator contends that the act in question violates the prohibition of the Constitution cited, and has been sustained at Special Term where a writ of mandamus was directed compelling the town clerk to accept and file certificates of nomination for the candidates for the office of supervisor to be voted for on the first Tuesday in April, 1919. (See, also, Laws of 1918, chap. 372, amdg. said § 588.)

If there were any doubt or ambiguity as to the plain meaning of the constitutional prohibition as applied to the facts here before us, we might resolve it in favor of the validity of the legislation attacked, but the language of article 3, section 18, seems to need no interpretation. The supervisors of the various towns in the county constitute the board of supervisors of the county. The act of the Legislature assumes not only to fix the day for their election contrary to the express will of the board, but provides when their terms shall begin and end. It cannot be contended that the act in question is not a local act. It expressly refers to Nassau county of all of the sixty-two counties in the State. Nor can it be said that the act simply fixes the time for the election of supervisors. It does more than that. It provides for their election, directs that they " shall be elected " and prescribes their term of office different from that now existing under the general law. " The terms of office of the supervisors * * * to be elected at the town meetings to be held in the towns of such county on the third day of April, nineteen hundred and seventeen, shall expire on the thirty-first day of December, nineteen hundred and nineteen." We are concerned with the constitutionality of this particular act, chapter 126 of the Laws of 1917. It is not profitable to consider what the Legislature might have done by general law, concerning the composition of the board of supervisors, nor does it help us to know that by other legislation relating to other counties they have assumed to act apparently in contravention of the constitutional prohibition. In this case the interference is with the right of the people of Nassau county to manage their own local affairs under the general Town Law. It is the people of Nassau county who are affected by this legislation.

If the act is unconstitutional it is no answer to say that the people of Rockland county or Onondaga county are more complaisant and have not resented similar interference with the " home rule " provisions of the Constitution.   In *Matter of Henneberger* (155 N. Y. 420), Judge GRAY, writing for the Court of Appeals, said: " It is manifest that the purpose of the people, with respect to local governmental measures and to the matters specified in section 18, was to restrict the legislative power and to confine its exercise to the passage of such general statutes as the welfare of the body politic, as a whole, might be deemed to require.   The imposition of such a constitutional restriction upon the legislative power was regarded as necessary, in order to put an end to flagrant abuses in its exercise.   The provision expressed a fundamental idea in our popular form of government; namely, to commit to local bodies the discharge of functions, which can be as well, if not better, discharged by them.   For a variety of reasons, the State Legislature should not be concerned with the administration of those local affairs, as to which there exist local legislative bodies; whose acts, motived by the needs of the citizens, are more sure to be pure and efficient.   Notwithstanding the existence of general laws, the statute books were being filled by acts operating upon particular and sectional interests."   The case at bar comes within the condemnation of the Court of Appeals.   The board of supervisors of Nassau county had and have full authority to change the day for holding the biennial town meeting to the general election day in November if they deem such change proper.   They have not changed it, and the Legislature attempts to repeal their action in fixing the day for these elections in the spring, and to change the date  whether  the local officials will or no. " Now, all these details could be, as they have been, properly regulated by general laws applicable to all the towns alike, and great mischiefs would result if, by the operation of local laws, all uniformity should be lost, and each town be suffered to go its own independent way.   And hence it was that in 1874 the discretion of the Legislature in these respects as to the important office of town supervisors, which had been exercised by general laws, was required to be so exercised in that manner only, and never by mere local bills.   The pro-

hibition, therefore, had a wide range of application to town supervisors, and prevented the passage of local bills giving one town power to choose its supervisor by a different mode of voting, at a different dictation of time and place, and for different official terms from other towns of the State." (*People ex rel. Clancy* v. *Supervisors,* 139 N. Y. 524.)

Referring to a like restriction on the Legislature, EARL, Ch. J., said: " It is doubtless true, that this provision of the Constitution has been frequently violated; that many bills appropriating the public money for local purposes have been passed without the requisite vote of two-thirds. This provision was in these cases overlooked or misconstrued. But these bills have generally passed unchallenged; and this, I believe, is the first time when this question has been directly raised in the courts. No length of usage can enlarge legislative power, and a wise constitutional provision should not be broken down by frequent violations." (*People* v. *Allen,* 42 N. Y. 378, 384.)

The learned counsel for the appellant has not argued or suggested that this statute came within section 23 of article 3 of the Constitution which excepts such acts as the Legislature may pass " which shall be reported to the Legislature by commissioners who have been appointed pursuant to law to revise the statutes." Indeed the opinion of the learned justice at Special Term closes with a statement that no such point was raised there.

As we are permitted to refer to the legislative journals (*People* v. *Petrea,* 92 N. Y. 128, 139), we find this measure came before the Legislature by introduction of a member of the Assembly on March seventh (Assembly Journal, 1917, vol. 1, p. 645) and on March fourteenth was revised in committee, without any suggestion of any . origin in any standing commission. (Id. pp. 813–815.)

The act, chapter 126 of the Laws of 1917, seems to violate the letter and spirit of the constitutional provision.

Therefore, I think we should affirm the order, with ten dollars costs and disbursements.

MILLS and PUTNAM, JJ., concurred; BLACKMAR, J., read for reversal, with whom JAYCOX, J., concurred.

BLACKMAR, J. (dissenting):

The requirement in section 18 of article 3 of the Constitution, that the Legislature act by general laws in " providing for election of members of boards of supervisors," is limited by section 26 of article 3 to the composition of the board, the manner of the elections, and the period or term of office. The constitutional limitation does not, therefore, app'y to the time of holding the elections; and the Legislature has several times so interpreted the constitutional provision in question.

About twenty-two years ago a law was passed applicable to the counties of Orange, Rockland and Sullivan only, changing the time of holding the town meetings and elections in the towns in said counties to the time and place of holding the general election in the fall. (Laws of 1897, chap. 439.) Like laws have been passed applicable to Erie county (Laws of 1902, chap. 10, § 1), Onondaga county (Laws of 1898, chap. 594, § 1), Oneida county (Laws of 1901, chap. 34, § 1) Rensselaer county (Laws of 1901, chap. 174, § 1), Niagara county (Laws of 1902, chap. 239, § 1), and Herkimer county (Laws of 1903, chap. 266, § 1). In the law of 1897 Orange, Rockland and Sullivan counties were mentioned by name. The language of the law regarding Erie county might possibly entitle it to be classed as a general law; but the laws applying to Onondaga, Oneida, Rensselaer, Niagara and Herkimer counties describe these counties in such a way as to identify them as accurately as if their names were used. These laws have been on the statute books from sixteen to twenty-two years, town officers and boards of supervisors have been elected under them, and towns and counties have been governed by virtue of elections under them. Since the passage of the act in question other local laws have been passed to the same effect. The meaning of the Constitution here suggested appears to me to be shown by the wording of the Constitution itself. If there be doubt, the interpretation by the Legislature, acquiesced in for many years, should be controlling, especially in the domain of public law. The practical interpretation is that the constitutional provision in question does not prohibit the change of the time of holding town meetings by a law applicable to one county only. The changes in the terms of

office were necessarily incidental only to the change of the time of holding the election.

Every act of the Legislature is presumed to be constitutional. In *People* v. *Petrea* (92 N. Y. 128, 138) this doctrine was carried so far that the Court of Appeals, for the purpose of upholding a law claimed to violate the very section of the Constitution under consideration, indulged in the presumption that the law was reported to the Legislature by commissioners and, therefore, saved by article 3, section 23, of the Constitution. Judge ANDREWS, speaking for the court, said: " We have no doubt that the presumption in favor of the constitutionality of statutes, applies in this case, and that in the absence of proof to the contrary, it will be presumed in support of the constitutionality of the act of 1881,* that it originated in a bill reported by commissioners." If that presumption obtains in this case, then the petition herein is insufficient as a basis for a decision that the statute is unconstitutional.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with costs.

JAYCOX, J., concurred.

Order affirmed, with ten dollars costs and disbursements.

---

* Laws of 1881, chap. 532, amdg. former Code Civ. Proc. § 1041.— [REP.