THOMAS J. SMITH, Appellant, v. CHARLES J. ODELL and Others, as Trustees of the Freeholders and Commonalty of the Town of Brookhaven, and Others, Respondents.

Second Department, January 14, 1921.

Waters and watercourses — navigable waters — lease by trustees of town of privilege to hunt wild fowl in certain parts of Great South bay illegal — right of general public to take wild fowl — rule of practical construction not applicable.

The leases executed by the defendant trustees of the town of Brookhaven, Suffolk county, N. Y., to the other defendants which purported to grant to the lessees certain parts of Great South bay for purposes of the gunning

privilege and the right of shooting wild fowl that inhabit said locality, are illegal and void and will be set aside at the suit of a taxpayer of said town.

Any person in the exercise of the right of navigation upon the bay has incidentally the right to take wild fowl thereon without any license by or hindrance from the trustees of the town, subject only to the conservation laws, State and Federal.

The rule of practical construction, based on the fact that for more than 100 years the trustees have been in the habit of making similar leases and no one has presumed to question their authority to do so, is not applicable to make valid the leases in question.

APPEAL by the plaintiff, Thomas J. Smith, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Suffolk on the 30th day of August, 1919, upon the decision of the court, rendered after a trial at the Suffolk Special Term, dismissing the complaint upon the merits.

*Frank W. Shaw,* for the appellant.

*Ralph J. Hawkins,* for the respondents Trustees of the Freeholders and Commonalty of the Town of Brookhaven.

*John R. Vunk,* for the respondents Henry Kreamer and others.

MILLS, J.:

This action was brought by plaintiff, as a taxpayer and inhabitant of the town of Brookhaven in said county, to have declared and set aside as illegal two certain leases which defendant trustees made to William Kreamer of certain parts of the " Great South Bay    *    *    *    for the purpose *    *    *    of the gunning privilege and the right of shooting wild fowl that habit said locality for the term of ten years, from March 1st, one thousand nine hundred and fourteen, at the yearly rental of five hundred ($500.00) dollars per year, to be paid in advance." (Quoted from the first lease, the other being of another like tract and similar in form.) The trustees gave the leases upon the assumption that, as the successors of the patentees under two certain Colonial patents, known as the Nicolls and Dongan patents, given respectively in 1666 and 1686 by authority of the King of

England, they (the trustees) had the exclusive right of " hunting and fowling " which in terms those patents purported to grant. The sole question involved and presented for our determination is whether or not those trustees possess such right and have the power to grant such privileges.

The construction of those patents has been the subject of much litigation and may be regarded as having been finally settled as to the main features by the decisions of our Court of Appeals, notably *Trustees of Brookhaven* v. *Strong* (60 N. Y. 56) and *Lewis Blue Point Oyster C. Co.* v. *Briggs* (198 id. 287).

The statement of facts in the former case gives a comprehensive and interesting review of the nature of the locality, the history of the patents and the legislation, Colonial and State, with reference to them, and the action of the inhabitants as to the rights thereunder. In that case it was held, in effect, that under those patents the trustees had practically the same rights in the bay and the land under the waters thereof that a private landowner, for example the owner of a farm, has in it. The point actually involved and decided, however, was merely that a license given by the trustees to an individual to plant and maintain a bed of oysters on a given space of the bottom of the bay was valid and exclusive. The opinion took pains to express a *caveat* as to " floating fish," by which we understand was meant fish that move about in the water as contra-distinguished from those like oysters and clams that remain inert upon the bottom — " It should be observed that the right to control the fishing for floating fish is not involved in this action, and is not considered." (60 N. Y. 73.) It is true that general language used earlier in the opinion is broad enough to support the conclusion that such a patent might confer general exclusive rights of fishing; but that language may be deemed limited by the *caveat* above quoted.

In the other case, the *Briggs Case* (*supra*), it was held that the public, the people generally, still possess the unlimited right of navigation in and over the waters of the bay, and that the Federal government, being the constitutional guardian of that right, had the power to excavate a channel in the bottom of the bay, although that work incidentally destroyed

the oyster bed of such a licensee of the trustees. The effect of that decision appears to be that the trustees have about the same property in the bay as a farm owner has in the margin of the highway passing through his farm, or as he would have in the farm generally if he had granted to others the full right of trespass upon it. The question seems, therefore, to be this: would such a farm owner, as to the margin of the highway or as to his lands generally as against those persons, have the right to prevent them, while thus lawfully upon his land, from taking wild game. It is elementary that no one has any property in wild game until he has reduced it into his actual manual possession, and that the mere ownership of the land whereon the game chances to be does not constitute such reduction to possession. Such owner may control hunting upon his land only by enforcing the laws against trespass. If, therefore, he has relinquished the protection of those laws, he cannot prevent such hunting. If one has the right to be upon the land, he has incidentally the right to take any wild game thereon, subject only to the conservation laws of the State and Nation. It seems to me, by parity of reasoning, that any person in the exercise of the right of passage, that is, of navigation upon the bay, has incidentally the right to take wild fowl thereon without any license by or hindrance from those trustees, subject only to the conservation laws, State and Federal. Without attempting to review in detail the other decisions of different branches of the court in reference to those patents, I venture to assert that the gist of the reasoning upon which they have been based is that the patentees took, in the bay, the same rights which a private owner of upland has therein. The brief of the respondent trustees states that a case was tried at Special Term about 1909 before a certain justice of this court, and that he therein decided broadly that the trustees under the patents did possess the exclusive rights of hunting and fishing. The brief does not refer to the case as being reported. Upon my inquiry of that justice, I learned that the only point decided in the case was as to the taking of eels by spearing in the bottom of the bay, where, according to the custom of that fish, they lie for the most part embedded in the mud. That decision may constitute something of a limitation to the " floating fish "

reservation. However that may be, I do not regard it as inconsistent with my view herein expressed.

It appears that for 100 years or more the trustees have been in the habit of making such leases as those in suit, and that no one before this action has presumed to question their right to do so. The respondents, therefore, invoke here the aid of the doctrine of practical construction as requiring us to affirm the judgment appealed from. In the *Strong Case* (*supra*) the Court of Appeals in its opinion (60 N. Y. 72) made something of this point, but I do not understand that its conclusion was based thereon.

Perhaps no subject for judicial consideration is more uncertain and unsatisfactory than the application of the doctrine of practical construction, at least so far as a court, not of last resort, is concerned. We have recently had a marked illustration of this in the case of *People ex rel. Cotte* v. *Gilbert* (187 App. Div. 23; revd., 226 N. Y. 103). In that case the Legislature had passed an act, by its terms relating to the county of Nassau alone, which provided that the town elections in that county should be held at the time of the general elections; whereas the Constitution (Art. 3, § 18) prohibits the Legislature from passing a local bill " providing for election of members of boards of supervisors," the supervisor being of course the leading town officer. The question presented for determination upon that appeal was whether or not that act violated that provision of the Constitution. Unquestionably it was a local act; and there seemed to a majority of us to be no escape from the conclusion that it did violate that constitutional prohibition, and, therefore, that was our decision by a vote of three to two. The Court of Appeals, however, unanimously sustained the act, largely upon the theory that a practical construction to that effect had been given to that clause of the Constitution by the enactment of a series of such acts over a period of twenty years, applicable to some nine different counties. In fact, the acts so referred to applied by name to only five counties, as the other acts were general in form, that is, applicable to all counties of certain named characteristics, which sort of legislation that court in several previous decisions had held to be general, not local, although in effect the characterization might be such as, by any reasonable possibility, to include

only a very few localities. Even with the experience of that case and its incidental admonition fresh in mind, I think that that doctrine is not here applicable. In the instant case there has been no prior legislative construction as to the matter in hand, and at least to my mind the true construction is too plain for controversy.

My attention has not been called to any prior decision directly construing the patents as to the right of hunting, and my own researches have ascertained none such. In my judgment, at least, the courts have already gone quite far enough in construing them in derogation of common right — indeed, much beyond what the true spirit of our institutions warrants — and I think that we should not in the instant case sustain an attempt to further extend construction in that direction. If in fact this usurpation has continued for a century unchallenged, there is, at least to my mind, all the greater need that it be now ended, and the people restored to their natural right of free hunting upon the public, navigable, waters of the bay.

There is no dispute as to the facts and, therefore, we should not send the case back for a new trial, but should make appropriate findings and grant the plaintiff the relief asked for.

Therefore, I advise that the judgment appealed from be reversed, without costs, and that new findings in favor of the plaintiff be made by this court and judgment awarded him for the appropriate relief, the form of the findings and judgment to be settled upon notice.

JENKS, P. J., RICH, BLACKMAR and KELLY, JJ., concur.

Judgment reversed, without costs. New findings in favor of the plaintiff will be made by this court, and judgment awarded him for the appropriate relief, the form of the findings and judgment to be settled upon notice.