Vincent A. Lupiano, J.
In this action for a declaratory judgment declaring section 131-a of the Election Law unconstitutional as violative of the Fourteenth Amendment to the United States Constitution and of section 1 of article I and section 1 of article II of the New York State Constitution, plaintiff moves for an order granting him summary judgment pursuant to CPLB 3212. Section 131-a of the Election Law provides: “ Any inconsistent provision of law to the contrary notwithstanding, in cities having a population of one million or more, in any case in which no candidate for the office of mayor, city council president or comptroller receives forty percent or more of the votes cast by the members of a political party for such office in a city-wide primary election, the board of elections of such city shall conduct a run-off primary election between the two candidates receiving the greatest number of votes for the same office. In, the event sack rpn-off election be required It shall *463 be held on the second Tuesday next succeeding the date on which the initial primary election was held.” 'Since State and Federal constitutional issues are raised, the Attorney-General of New York State has intervened in defense of constitutionality pursuant to section 71 of the Executive Law.
It is initially urged that plaintiff lacks standing to bring this action. Plaintiff, Mario A. Procaccino, is a former Comptroller of the City of New York and in the last mayoralty election in New York City was a candidate for the office of Mayor. In his complaint, plaintiff avers that he is a citizen of the United States, a resident in the State of New York, City of New York; a duly qualified voter and an enrolled Democrat qualified to vote and to run for Mayor, Comptroller or President of the City Council in the Democratic Party Primary Elections to be held during the year 1973. In view of plaintiff’s history as a holder of one public office and a candidate for another public office, both embraced within the legislative enactment under consideration and in view of the presumption of continuance (Wilkins v. Earle, 44 N. Y. 172, 192 [1870]; see Bender’s New York Evidence, § 230.06), it appears that plaintiff has the requisite standing. Indeed, the arguments advanced against plaintiff’s standing by the Attorney-General as intervenor are cursory and couched in such general terms as to belie their merit.
Historically, as the right of suffrage is a political and not a natural right, it is within the Legislature’s power to prescribe the manner in which such right shall be exercised. This power, subject to constitutional restrictions, extends to the regulation of the manner by which candidates for public office are chosen and elected (see Abrahams’ New York Election Law Manual, ch. I; see, also, N. Y. Const., art. Ill, § 1). However, plaintiff contends that the exercise by the Legislature of this power as embodied in section 131-a of the Election Law violates paragraph (2) (of art. IX, § 2, subd. [b]) of the New York State Constitution. This constitutional provision states that “ subject to the bill of rights of local governments and other applicable provisions of this constitution, the legislature: * * * shall have the power to act in relation to the property, affairs or government of any local government only by general law, or by special law only (a) on request of two-thirds of the total membership of its legislative body or on request of its chief executive officer concurred in by a paajority of such membership ”. (Emphasis supplied.) It has not been demonstrated that the subject enactment was passed pursuant to the *464 afore-mentioned constitutional provision. Clause (b) (of art. IX, § 2, subd. [b], par. [2]), relating to a “ certificate of necessity ”, has by its own terminology no application to the City of New York.
The general purpose of this constitutional “ home rule” provision was, insofar as the present inquiry is concerned, to secure to the people of the various localities the right to choose their officers without hindrance from the State. An appropriate introduction to an examination of the State-city relation is the observation by Judge Dillon that “ it must now be conceded that the great weight of authority denies in toto the existence, in the absence of special constitutional provisions, of any inherent right of local self-government which is beyond legislative control ” (1 Dillon, Municipal Corporations [5th ed.], § 98).
A brief analysis of the historical development of municipal home rule commencing with the New York amendment of 1923, which revised article XII of the then New York State Constitution, may be helpful in understanding the complexities of home rule. 'Section 2 of said article XII was designed to prevent undue legislative intrusion into municipal affairs, by requiring that laws relating to the " property, affairs or government of cities ” must either apply to all cities alike or be passed by a two-thirds vote of each house of the Legislature upon a message from the Governor declaring that an emergency exists requiring such legislation. This section further defined a special law to cover any one which was “ special or local in its terms or in its effect”. Subsequently in 1927 the Court of Appeals under this provision struck down .a statute which was not passed upon an emergency message and by the concurrent action of two thirds of each house, holding that such act was essentially local in its effect (Matter of Mayor, etc., of City of New York [Elm St.], 246 N. Y. 72 [1927]). Inquiry, the court held, was no longer confined as to whether the act was general or special “ in its terms ”, but must go further and determine whether it was general or local “ in its effect ” (p. 76). The emerging test laid down by Chief Judge Cabdozo (p. 75) is delineated as follows: “If the class in its formation . is so unnatural and wayward that only by the rarest coincidence can the range of its extension include more than one locality, and at best but two or three, the act so hedged and circumscribed is local in effect. If the same limits are apparent upon the face of the act, unaided by extrinsic evidence, or are *465 so notorious or obvious as to be the subject of judicial notice, it is also local in its terms
Two years later the Court of Appeals rendered its decision in Adler v. Deegan (251 N. Y. 467 [1929]), which is still regarded as the key determination in the State-home rule controversy relating to respective fields of power. The origin of the phrase “ property, affairs or government ” may be traced to the Constitution of 1894. Section 2 of article XII provided that with respect to laws relating to the property, affairs or government of cities, special laws could be passed only in conformity with its provisions and would be subject to the so-called suspensive veto which gave the municipality, whose “ property, affairs or government ” were affected by special enactment of the Legislature, an opportunity to express approval or disapproval through its mayor (in cities other than those of the first class, through the mayor and the legislative body concurrently). The Home Rule Amendment of 1923 incorporated the identical phrase “ property, affairs or government ” which marked the limits of the old suspensive veto power. In Adler the court found that this phrase was taken from the 1894 Constitution by the promulgators of the Home Rule Amendment with the intention of preserving its technical meaning.
With such preservation, a difficulty has arisen which is epitomized by the language of Judge Crane : “ the fact remains that this court gave to these words, £ property, affairs or government of cities,’ a special limited meaning, and we would be unfair to the people of this State if we now changed their meaning. When the people put these words in article XII of the Constitution, they put them there, with a Court of Appeals’ definition, not that of Webster’s Dictionary ” (Adler v. Deegan, 251 N. Y. 467, 473, supra) (emphasis supplied).
Consequently, judicial interpretation of the phrase “ property, affairs or government ” before 1924 was regarded as establishing a precedent binding upon the court (Adler v. Deegan, supra, pp. 471-473). The rationale of Adler may be summed up in the pithy statement that ££ matters of State concern ” are beyond the purview of home rule. Chief Judge Cardozo, in a concurring opinion, rejected the test of predominance of interest and declared that the yardstick should be “ that if the subject be in a substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality. * * * L do not say that an affair must be one of city concern exclusively to bring it within the scope of the powers conferred upon the inquipi *466 pality by section 3 of the Home Rule article and ..section 11 of the City Home Rule Law in cases where the-'State has not undertaken to occupy the field. I assume that if the affair is partly State and partly local, the city is free to act until the State has intervened. As to concerns of this class there is thus concurrent jurisdiction for each in default of action by the other ” (Adler v. Deegan, supra, p. 491).
The constitutional grant of home rule as primarily embodied in article IX of the present State Constitution is implemented by the Municipal Home Rule Law (which replaced, inter alia, the City Home Rule Law). It has been aptly observed by the Court of Appeals, in a case involving an attempt by the State Legislature to change the boundary line of New York City, that cities “ are political institutions, erected to be employed in the internal government of the State ” and are subject to legislative power except as expressly restricted by the Constitution and laws promulgated thereunder (City of New York v. Village of Lawrence, 250 N. Y. 429, 437 [1929]). It has been also stated that “ the well-recognized principle controls that all legislative power remains in the State Legislature, except as the Constitutions, State and Federal, have limited such power ” (concurring opn. of Pound, J. in Adler v. Deegan, 251 N. Y. 467, 480, supra). More specifically, “ Cities acquire their corporate life by force of. special, several and purely local acts of the legislature, which creates and frames them in the regular exercise of governmental functions. They have never been created by general laws, and cannot easily or prudently be organized in any other method than by special and local enactments ” (People ex rel. Clancy v. Board of Supervisors of Westchester County, 139 N. Y. 524, 529 [1893]).
Regarding attacks upon the constitutionality of a legislative enactment, the applicable rules of law are well known. It must be noted that such enactments carry a strong presumption of constitutionality including a rebuttable presumption of the existence of necessary factual support for their provisions (Borden’s Co. v. Baldwin, 293 U. S. 194, 209, 210). Statutes are stricken down only as a. last resort (Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367), and only when unconstitutionality is shown beyond a reasonable doubt (Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 79; Wiggins v. Town of Somers, 4 N Y 2d 215, 218-219; Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 540-541; Matter of Fay, 291 N. Y. 198, 206-207). With regard to due process, it is requisite that a law be not unreaeouable pr arbitrary and *467 that it he reasonably related and applied to some actual and manifest evil (Matter of Jacobs, 98 N. Y. 98, 110; Fisher Co. v. Woods, 187 N. Y. 90).
Needless to say, this caveat has been heeded in the rational process employed herein.
The 1963 Home Rule Amendment to the State Constitution, while retaining the basic structure of the 1938 amendment including the crucial words “ property, affairs or government ”, contains a declaration that article IX is to be liberally construed (N. Y. Const., art. IX, §• 3, subd. [c] [1938], as amd. [1964]).
Many matters, which have come to the fore on the governmental horizon, are of both State and local concern, and as such are inseparably bound together. A scrutiny of the numerous judicial pronouncements in the area of home rule and of the historical legislative development of this concept in relation to the City of New York patently demonstrates the unique position of the latter (see, e.g., Adler v. Deegan, 251 N. Y. 467, 477-478, 490-491, supra; People ex rel. Einsfeld v. Murray, 149 N. Y. 367, 380-381 [1896]).
With such understanding it'may be concluded that the legislative enactment under consideration does not conflict with article IX of the State Constitution, because it clearly relates to a matter of State concern and the run-off procedure delineated therein is part of the election process (see Matter of Devoe v. Trustees of Inc. Vil. of Colonie, 11 A D 2d 602 [3d Dept., 1960]). In positioning this conclusion on the basis of State concern, the force of section 1 of article IX of the State Constitution lends itself in pertinent part: “ Effective local self-government and intergovernmental cooperation are purposes of the people of the state ”. This declaration significantly forms the policy basis underlying section 131-a of the Election Law, to wit, adjustment of the primary election process to better reflect the will of a majority or sizable plurality of voters. In this accomplishment the State’s concern cap-not be initially frustrated. Home rule must still be considered.
The germ of the State-city home rule controversy resides in the fact that the city is within the State. Thus, the elective process delineated in section 131-a of the Election Law is of concern both to New York City insofar as it affects the city, •and to the State, insofar as control over the elective process and its conduct reside in the legislative power, subject, of course, to constitutional limitation.
*468 The reluctance of the judiciary to depart from the rationale of Adler, respecting the State-city home rule controversy, may simply be based on the recognition that a different construction of the phrase “property, affairs or government ” so as to depart from the Adler holding would be more appropriately a matter for the Legislature, given the premises delineated in Adler.
The fundamental purpose of home rule is the attainment of a workable, efficient adjustment between the State and local government. A “ general law ” is defined in subdivision 5 of section 2 of the Municipal Home Buie Law as “ a state statute which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages ”. A “ special law ” is defined as “ a state statute which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages ” (Municipal Home Buie Law, § 2, subd. 12). Examination of section 131-a of the Election Law impels the conclusion that it is a special law. Apropos, “In order to be deemed general, unless the act implies to all places in the State (e.g., all the counties), it must create a class.. The class constructed by the act may be based on population, and will be upheld, if conditions, because of such population, can be recognized as possibly common to a class and are reasonably related to the subject of the statute. Separate classes based on population are permissible where conditions due to differences in population might reasonably require differentiation in laws applicable to them. However, where the reference to population serves only to designate and identify the place to be affected, it will be deemed a local act. In the latter situation, the purported class would be one in name only — a local law masquerading as general ” (Farrington v. Pinckney, 1 N Y 2d 74, 80-81 [1956]). The acute reasoning of Chief Judge Cakdozo in Matter of Mayor, etc., of City of New York (Elm St.) (246 N. Y. 72, supra), is thus recognized as a viable test in determining whether a legislative enactment is general or special (see, also, Matter of Henneberger, 155 N. Y. 420; Stapleton v. Pinckney, 293 N. Y. 330). Applying the test so ably delineated -in these' cases to the legislative act under review, the specific enumeration therein of offices peculiar to the City of New York, to wit, Mayor, City Council President and Comptroller, leaves no doubt that the act is special and not general. However, this categorical conclusion does not leave the act vulnerable to attack on the con *469 stitutional ground that it is violative of article IX (§ 2, subd. [b], par. [2]) of the State Constitution, because, as discussed above, the ‘1 state concern ’ ’ doctrine of Adler removed this special enactment from the phrase “ property, affairs or government ” embodied in said constitutional provision.
As may be seen, however, the spirit of home rule has not been vitiated. Article IX (§2, subd. [c], cl. [ii]) of the State Constitution provides that ‘1 every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the prop-i erty, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government: (1) The * * * mode of selection * * * of its officers ”, (Emphasis supplied.) This constitutional provision as implemented by sections ' 10 (subd. 1, par. [ii]) and 22 of the Municipal Home Buie Law enables the local government to supersede the State statute where a special law is concerned insofar as such law affects the locality, subject to legislative restriction and constitutional limitation (cf. City Home Buie Law, § 12 [L. 1924, ch. 363]).
There remains, now, only consideration of plaintiff’s claim that section 131-a of the Election Law violates the State and Federal Constitutions as being in derogation of the right to vote and of the equal protection of the laws. The Election Law, insofar as it regulates the nomination and election of city officers, is not such a statute as in terms and, effects applies alike to all cities (Bareham v. City of Rochester, 246 N. Y. 140 [1927]). In direct bearing, section 130 of the Election Law provides: “Nominations of candidates for election to public office * * * are governed by this article, but this article shall not repeal nor affect tie provisions of a statute, general or local, prescribing a particular method of making nominations of candidates for certain school or city offices.” It has not been demonstrated and it does not appear that the subject, enactment restrains the right to participate in the nomination of candidiates (see 18 N. Y. Jur., Elections, §§ 176, 331). Section 131-a of the Election Law might conceivably be deemed a burden in respect of the elective process, but it is patently not a hindrance and has not been shown to be unreasonable. “ Since , there must be limitations and systemization in the exercise of the elective franchise in order that it may be practicable, *470 efficient, intelligent, and honest, legislative regulations which are reasonable and not discriminatory, cannot rightfully be said to contravene any constitutional right; the courts cannot condemn restrictions for a legitimate purpose reasonably adapted to effect such purpose ” (18 N. Y. Jut., Elections, § 80). Here, no voter is disenfranchised or deprived of the right to vote as given under the Constitution and laws of this State. The challenged provision gives the voters entitled to vote in the primary elections the opportunity to choose between the two highest candidates for their party’s nomination for each of the enumerated offices, where no candidate for such office receives 40% or more of the votes cast. This enactment, it is hoped, will affirmatively implement the reality of representative government by reflecting a more valid consensus of the party members. Differences in the application or laws to different groups do not in and of themselves constitute a violation of the Equal Protection Clause. (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11.) However, if such distinction is ‘ ‘ invidious ’ ’ it does violate the Equal Protection Clause. “ In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification ” (Williams v. Rhodes, 393 U. S. 23, 30 [1968]). It has already been demonstrated herein that this enactment is a matter of State concern, is not arbitrary simply because it affects only New York City and has a rational basis, to wit, the implementation of “ effective local self-government.” (See N. Y. Const., art. IX, § 1; see, also, Campbell v. Board of Educ., 310 F. Supp. 94 [E. D. N. Y., 1970]).
To uphold plaintiff’s contention that section 131-a of the Election Law violates the Equal Protection Clause solely because it applies to New York City and not to all of New York State would, as a logical consequence, render the home rule concept illusory. The provisions of the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York Constitution “ do not require every law to be equally applicable to all persons (Barbier v. Connally, 113 U. S. 27). Equal protection only requires that a statute operate -equally upon all members of the group provided the group is defined reasonably — reasonably being measured in terms of a proper legislative purpose ” (Matter of Ortiz, 60 Misc 2d 756, 759; see People v. Richter, 206 Misc. 304).
*471 Accordingly, pursuant to subdivision (b) of CPLR 3212 summary judgment is granted to the extent of directing judgment in favor of the defendant declaring section 131-a of the Election Law of the State of New York constitutional.